UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SCOTT WHITEHOUSE, | No. 2:15-cv-2556-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.    BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since December 29, 2011. Administrative Record ("AR") 164-170. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 113-118, 120-125. On March 24, 2014, a hearing was held before administrative law judge ("ALJ") Kyle E. Andeer. *Id.* at 36-

1

71. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.*

On April 25, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 18-31. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since December 29, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following medically severe impairments: status post cervical and lumbar trauma; obesity; and depression/anxiety impairments secondary to pain (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with opportunity to alternate between sitting and standing during the workday at will provided they [sic] are not off task for more than ten percent of the workday; limited to simple, routine tasks in a low stress work environment, i.e., only occasional decision making or judgment required and only occasional changes in the work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1975 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 29, 2011, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 20-31.

Plaintiff's request for Appeals Council review was denied on October 19, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

1   *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,
2   180 F.3d 1094, 1097 (9th Cir. 1999).

3   The findings of the Commissioner as to any fact, if supported by substantial evidence, are
4   conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is
5   more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th
6   Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a
7   conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*
8   *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9   "The ALJ is responsible for determining credibility, resolving conflicts in medical
10  testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
11  2001) (citations omitted). "Where the evidence is susceptible to more than one rational
12  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
13  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14  III.   ANALYSIS

15  Plaintiff argues that the ALJ erred in (1) discrediting his subjective complaints absent
16  clear and convincing reasons and (2) failing to provide sufficient reasons for rejecting his treating
17  physician's opinion. ECF No. 10 at 3-15.

18  A. The ALJ Erred in Rejecting Plaintiff's Testimony

19  In evaluating whether subjective complaints are credible, the ALJ should first consider
20  objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341,
21  344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ
22  then may consider the nature of the symptoms alleged, including aggravating factors, medication,
23  treatment and functional restrictions. *See id*. at 345–47. The ALJ also may consider: (1) the
24  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
25  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
26  prescribed course of treatment, and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d
27  1273, 1284 (9th Cir. 1996). Work records, physician and third party testimony about nature,
28  severity and effect of symptoms, and inconsistencies between testimony and conduct also may be

1  relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek
2  treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ
3  in determining whether the alleged associated pain is not a significant nonexertional impairment.
4  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part,
5  on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir.
6  1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6
7  (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the
8  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."
9  *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999).

10       At his administrative hearing, plaintiff testified that he was in a car accident in December
11  2011, which left him disabled. AR 41-43. He stated that he experiences headaches and pain in
12  his neck, shoulder, back, legs, and foot, and that he has difficulty with concentration. *Id*. at 44,
13  46-51. His neck pain flares up three to four times a week, which "kind of" coincides with his
14  headaches. *Id*. at 47-48. He testified that he has left leg pain that aches in his calf and right leg
15  pain that continues down to his foot. *Id*. at 49-50. In addition to being prescribed pain
16  medication and muscle relaxers, plaintiff's pain has been treated with "many injections," which
17  he claims only provided relief for two or three weeks. *Id*. at 51-52.

18       He testified that he could not sit still and needs to alternate between sitting and standing to
19  avoid back pain. *Id*. at 53. The longest he can sit at one time is about 45 minutes to an hour,
20  although if he sat for that long "a number of times a day" he would "not do well" the next day.
21  *Id*. He also stated that due to back pain he needs to lie down at least "a few times a day," and that
22  he would be bedridden at least a couple times a week. *Id*. at 54, 58. He testified that it usually
23  takes him a long time to get ready in the morning, and that he has difficulty shaving and buttoning
24  his shirts. *Id*. 56. However, he reported that upon getting ready he usually will go to the market,
25  Starbucks, or "do a little cardio" exercise if he is feeling up to it. *Id*.

26       In a function report, plaintiff claimed that his impairments caused difficulties with
27  sleeping and memory and prevented him from hiking, participating as a search and rescue
28  volunteer, reading for more than 20 minutes, lifting weights, and engaging in social activities. *Id*.

5

1  at 221. He is able to cook chicken, vegetables and some type of starch, but he has to "have
2  everything ready and in the process for cooking." *Id*. at 222. Plaintiff reported that he could
3  perform some light cleaning, but that bending, stooping, reaching, scrubbing, and vacuuming
4  were difficult due to back pain. *Id*. He indicated that he is able to drive a car, but that it makes
5  him anxious and "on edge." *Id*. at 223. He also stated that he is able to go shopping once a week
6  for about an hour. *Id*.

7  The ALJ provided several reasons for his finding that plaintiff was not fully credible.
8  First, the ALJ found that plaintiff "described activities of daily living, which are not as limited as
9  one would expect considering the complaints of disabling symptoms." AR 28. The ALJ
10 observed that plaintiff was able to prepare meals, perform light cleaning, drive a car, shop for
11 groceries, watch television, and participate with the Masons and Sheriff's search and rescue. *Id*.

12 An ALJ may consider activities of daily living in assessing a plaintiff's credibility. *Burch*
13 *v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "[I]f a claimant engages in numerous daily
14 activities involving skills that could be transferred to the workplace, the ALJ may discredit the
15 claimant's allegations upon making a specific findings related to those activities." *Id*. However,
16 the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that
17 daily activities are inconsistent with testimony about pain, because impairments that would
18 unquestionably preclude work and all the pressures of a workplace environment will often be
19 consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995,
20 1016 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly
21 asserted that the mere fact that a plaintiff has carried on daily activities . . . does not in any way
22 detract from her credibility as to her overall disability."). Moreover, the Commissioner's
23 regulations provide that "activities like taking care of yourself, household tasks, hobbies, therapy,
24 school attendance, club activities, or social programs" are generally not considered substantial
25 gainful activity. 20 C.F.R. § 404.1572(c).

26 Almost all of the activities identified by the ALJ merely show that plaintiff has the ability
27 to care for himself, and does not demonstrate an ability to work on a sustained basis. Moreover,
28 the evidence indicates that plaintiff had difficulty completing many of the activities identified by

1   the ALJ. Plaintiff stated he could perform "some light cleaning," but he further explained that
2   bending, stooping, reaching, scrubbing, and vacuuming were very difficult due to back pain. *Id*.
3   at 222. He also indicated that due to his injury, it takes significantly more time to complete house
4   chores. *Id*. at 222. Although he testified that he was able to shop for groceries, plaintiff
5   explained to the ALJ that shopping trips would exacerbate his back pain. *Id*. at 54-55. Plaintiff
6   also reported being able to drive a car, but noted that driving causes severe anxiety and that he
7   stays close to home. *Id*. at 223.

8   The only activity identified by the ALJ that could conceivably be construed as
9   inconsistent with plaintiff's complaints of debilitating symptoms is his status as a search and
10  rescue volunteer. However, the record does not establish whether and how often plaintiff
11  participated in this activity, and if so what specifically this activity entailed. Moreover, in his
12  functional report plaintiff stated that he can no longer participate as a search and rescue volunteer
13  due to his impairments. *Id*. at 221. Plaintiff's friend, Katrina Johnson, completed a third-party
14  statement in which she confirmed plaintiff's inability to hike, but also reports that plaintiff's
15  participation with the "search and rescue unit [has] decreased substantially, and that he rarely
16  engages in [this] activity." AR 235.

17  Ms. Johnson's "rarely engages" statement, which the ALJ cited in support of his
18  credibility determination, does not itself demonstrate an ability to engage in substantial activity.
19  Nor does it, in combination with other evidence show such ability. Aside from Ms. Johnson's
20  vague statement that plaintiff "rarely engages" in this activity, there is no other evidence
21  establishing how long or often, if ever, plaintiff participated as a search and rescue volunteer.
22  More significantly, the record is completely silent as to what specific activities plaintiff actually
23  performed. Both plaintiff and Ms. Johnson stated that plaintiff has not been able to hike since the
24  accident, which suggests plaintiff's rare participation, if any, as a search and rescue volunteer did
25  not involve significant physical activities. *Id*. at 224, 258. Whatever role plaintiff may have had,
26  the facts are not developed. The ALJ merely asserted his conclusion that plaintiff's participation
27  with the search and rescue unit was inconsistent with his "complaints of disabling symptoms."
28  *Id*. at 28. No specific testimony of physical activity is identified as undermining plaintiff's

credibility. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 1028, 1035036 (9th Cir. 2007) (an "ALJ must specifically identify what testimony is credible and what undermines the claimant's complaints."); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (same). The ALJ's conclusory finding that plaintiff's involvement with the search and rescue unit was inconsistent with unspecified complaints of disabling symptoms does not rise to the clear and convincing standard.

The ALJ also found that plaintiff was not credible because medical treatment was generally successful in controlling his symptoms. AR 28. The ALJ specifically noted that: a January 8, 2013 epidural injection decreased the frequency of plaintiff's headaches; in September 2012, plaintiff stated that his neck pain continued to slowly improve; in January 2012, plaintiff reported that his cervical neck pain improved; and a physical therapy record documented improvement in cervical range of motion. *Id*. at 28-29.

The ALJ correctly notes that plaintiff reported in January 2013 that an epidural injection the prior month helped decrease his headaches. AR 584. However, the same treatment note indicated that plaintiff still had headaches one to two times a week, and that he continued to see a pain management specialist. *Id*. It was further noted that plaintiff's pain medications included morphine sulfate, Norco, and Flexeril. *Id*.

The ALJ also correctly noted that in September 2012 plaintiff reported that he was "slowly improving" and that he "feels that his neck pain is improving." *Id*. at 590. However, the same record indicates that plaintiff continued to have headaches 2 to 3 times a week, for which he was prescribed narcotic medication and muscle relaxers. *Id*. at 590-91. While the February 2012 physical therapy record documented improvement, it also noted that plaintiff's symptoms persisted. AR 984. Moreover, medical records from the following month indicate that plaintiff received pain management treatment for continued neck pain and that physical therapy had been put on hold due to increased neck pain. *Id*. at 292.

/////

Other evidence in record that was not discussed by the ALJ strongly conflicts with the finding that plaintiff's impairments were successfully controlled with treatment. Of particular significance are treatment records from plaintiff's pain management physician, Dr. Stoney, which consistently reflect a required strong narcotic pain medication and nerve blocks as plaintiff "failed conservative management with physical therapies, trigger point injections, NSAID, muscle relaxants, rest, activity restrictions and analgesic medications." *See, e.g.*, AR 623, 628, 630, 632, 634, 636, 638, 640. Thus, the record suggests the ALJ's decision merely cherry-picked the most favorable language from a few documents, without considering the records as a whole. Accordingly, the few reference to improvement fails to provide a sufficient basis for rejecting plaintiff's testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"); *Holohan v. Massanari*, 246 F.3d 1138, 1207 (9th Cir. 2001) (ALJ may not rely on select medical records while ignoring others that indicate "continued, severe impairment."); *Cf. Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008) (references that impairment was "improving" was not "sufficient to undermine the repeated diagnosis of those conditions, or [the physician's] more detailed report.").

Next, the ALJ found that plaintiff was not credible due to inconsistent statements regarding the frequency of his headaches. AR 29. But the record does not support this. The ALJ observed that on January 31, 2012, plaintiff stated he had approximately two headaches a week and occasionally had intermittent nausea, but testified that he had headaches three to four times a week. This does not show an inconsistency. Plaintiff reported having headaches approximately two times a week in January, 2012, and he testified at his hearing that he has headaches "[a]t least a couple time" a week, "[s]ometimes three."[2] AR 60. Labeling those statements as inconsistent is a mischaracterization.

/////

---

[2] Plaintiff did testify that he had neck flare ups "probably three or four times a week," which "kind of coincide[]" with his headaches. AR 47. However, as noted, he specifically testified to experiencing headaches 2 to 3 times a week.

Even absent that mischaracterization, the ALJ's reliance on this reason is dubious. Plaintiff's administrative hearing was held in March 2014, more than two years after plaintiff reported having approximately two headaches a week. Thus, any description by plaintiff of the frequency of his headaches two years later (i.e., at the time of the hearing) is not indicative of what that frequency was in January 2012, and vice versa. Concluding that plaintiff is not credible based on such a minimal change in the frequency of headaches over a two year period is not supported by substantial evidence and does not justify that ALJ's rejection of plaintiff's testimony. *Cf Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion).

The sole remaining reason for rejecting plaintiff's testimony is the conclusion that plaintiff's "demeanor while testifying at the hearing was generally unpersuasive." AR 29. While an ALJ is permitted to consider personal observations of the claimant in assessing credibility, "[t]he ALJ's observations of the claimant's function may not form the sole basis for discrediting a person's testimony." *Orn v. Astrue*, 495 F.3d at 639; *see also Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible."). Accordingly, this last reason cannot sustain the ALJ's rejection of plaintiff's testimony.

B. Remand for Further Proceedings

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 406, 407 (9th Cir. 2015) (internal quotes and citations omitted). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Id*.

/////

/////

Here, the court finds that further consideration of plaintiff's credibility in light of the medical records as a whole is necessary for determination of whether plaintiff is disabled under the Social Security Act. Accordingly, remand for further proceedings is appropriate.[3]

IV. <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 30, 2017.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3] Because the matter must be remanded for further consideration of plaintiff's subjective complains, the court declines to address plaintiff's additional argument.

11